## Dutton v. Dutton

C.P. of Clinton County, no. 1316-95.

*Robert D. O'Connor,* for plaintiff.
*Paul D. Welch,* for defendant.

SAXTON, Jr., *P.J.,* March 4, 1996—

## PROCEDURAL AND FACTUAL BACKGROUND

This case is before the court on plaintiff's complaint in divorce pursuant to title 23 Pa.C.S. §3301(d). Plaintiff shall be referred to as *Larry* and defendant as *Katherine.*

Larry alleges that the parties have lived separate and apart for two years and that the marriage is irretrievably broken. This complaint filed November 20, 1995, was Larry's second complaint in divorce under §3301(d). His first, filed October 24, 1994, to Clinton County civil docket number 1266-94, was withdrawn by Larry on October 12, 1995. Katherine filed an answer and counterclaim to Larry's current complaint asserting that the marriage is not irretrievably broken. On January 24, 1996, a hearing was held pursuant to §3301(d)(ii), to determine whether the parties' marriage is irretrievably broken. After the taking of testimony, the court ordered the parties to file briefs.

Larry and Katherine were married on August 20, 1971. They initially separated sometime in April of 1992 when Larry was required to leave the marital home pursuant to a protection from abuse order. This order was later dissolved at Katherine's request. However, Larry never returned to the marital home.

Larry is a self-employed truck driver which requires him to do a great amount of traveling and to spend long periods away from the marital home. Larry testified he would often be gone for a month at a time and he wanted Katherine to accompany him on these trips,

but she refused. He also testified that they argued and Katherine refused to be his "partner" in all aspects of his life; specifically, his trucking business. Larry testified that after he and Katherine separated in April 1992, they attempted reconciliation in November 1993. At that time, Katherine flew to Atlanta to meet Larry where he was stopped due to a trucking strike. Larry wanted this week to be a vacation in a relaxed attempt at reconciliation. The parties had sexual relations on the first two days of their weeklong attempt at reconciliation. This attempt failed because Katherine became upset by a picture, of a woman, she found in Larry's luggage. Katherine returned to the marital home and Larry continued his over-the-road hauls.

After this failed attempt at reconciliation, Larry and Katherine still remained in contact with each other. In December 1993 and January 1994, Larry telephoned her several times. She asserted that at that time the conversations were attempts to work things out in their marriage.

On January 3, 1994, Larry visited Katherine and gave her a Christmas gift. Katherine testified that in February and March 1994, they dated on several occasions and Larry kept in touch with her through phone calls. Further, on March 1, 1994, they spoke specifically about reconciliation.

On March 4, 1994, Larry asked Katherine to go away with him, but Katherine refused explaining to Larry that she could not "pick up" and go away with him "on the spur of the moment." Larry called Katherine three times in April. During his phone call on April 13, 1994, he again asked Katherine to come away and meet him, this time in Little Rock, Arkansas. Again, Katherine refused explaining that she could not just pick up and go. Further, Katherine was leery of going

with Larry on another trip after the previously failed attempt at reconciliation. The next contact was not until September 1994, when Larry telephoned and they went to dinner.

In October 1994, Larry telephoned Katherine to tell her he was sending her divorce papers. In March 1995, Larry phoned Katherine to discuss their income tax situation; there was no discussion of reconciliation. Again in July 1995, Larry telephoned Katherine and asked her to travel with him to Seattle, Washington on a trucking haul. Katherine refused, indicating she was unable to go away with him on such short notice.

Larry testified, that in his opinion, the first step toward any reconciliation with Katherine was her willingness to accompany him on his hauling trips so as to become a full "partner" in his life. Larry claims Katherine refused to do this at every opportunity. Larry did not deny contacts with Katherine; however, Larry testified the requests to go with him on his business trips were done in an attempt to determine whether she had a genuine desire to be the "partner" he wanted in his life. However, he stated that she always had an excuse not to join him. Larry does not believe Katherine wants to be a part of his life and he believes she will never change. Further, Larry testified the parties never had any conversations about reconciliation. Larry asserts his marriage to Katherine is over; he stated he does not love her. Moreover, Larry has a girlfriend who is a "partner" in his life. He loves her and wants to marry her after divorcing Katherine.

Katherine claims Larry consistently led her to believe they were going to reconcile. Additionally, Katherine testified she still wants to reconcile even though she is aware of Larry's relationship with another woman. Katherine did not request that the court order marriage

counseling. Katherine does not work and lives off her spousal support. She denies objecting to the divorce for monetary reasons.

## DISCUSSION

Title 23 section §3301(d) provides as a grounds for divorce the irretrievable breakdown of the parties' marriage. Under this section, the plaintiff must allege in the complaint that the parties have lived separate and apart for two years and that the marriage is irretrievably broken. 23 Pa.C.S. §3301(d)(1). If the defendant contests either of these allegations the court must hold a hearing and decide whether the marriage is irretrievably broken and whether the parties have lived separate and apart for two years. 23 Pa.C.S. §3301(d)(1)(ii). If after hearing, the court determines "there is a *reasonable* prospect of reconciliation" between the parties the court should continue the matter for at least 90 days and require the parties to attend marriage counseling in accordance with §3302.[1] 23 Pa.C.S. §3301(d)(2). After this counseling period has expired, if one of the parties states under oath that the marriage is irretrievably broken, the court shall determine whether the marriage is irretrievably broken. 23 Pa.C.S. §3301(d)(2). If the court determines the marriage is irretrievably broken, the court shall grant the divorce.

The parties stipulate they have lived separate and apart for more than two years as required by the statute. However, the parties disagree as to whether there has been an irretrievable breakdown of their marriage. Larry asserts the marriage is irretrievably broken and asks this court to grant him a divorce under §3301(d). Kath-

---

1. Section 3302(c) provides that in cases under §3301(d)(2) the court shall require up to a maximum of three counseling sessions.

erine asserts the marriage is not irretrievably broken and asks this court to deny Larry's request for a divorce, or in the alternative, continue the matter and order marriage counseling pursuant to §3301(d)(2).

Irretrievable breakdown is defined as "estrangement due to marital difficulties with no reasonable prospect of reconciliation." 23 Pa.C.S. §3103. As stated in the legislative findings and intent in §3102, the divorce laws of the Commonwealth were instituted to both effectively deal with the realities of matrimonial experience, and "encourage and effect reconciliation and settlement of differences between spouses." The court, in construing the provisions of the divorce law, must consider these objectives. 23 Pa.C.S. §3102(b). Each marriage relationship is unique; therefore, the court must look at the facts of each individual case to determine whether the marriage is irretrievably broken with no "reasonable prospect of reconciliation." Since each marriage relationship is based upon different facts and circumstances, there is no checklist which can be followed to show that a marriage is irretrievably broken. However, there are several cases which provide guidance in determining whether certain facts evidence the irretrievable breakdown of a marriage.

In *Wikoski v. Wikoski,* 42 D.&C.3d 334 (Wyoming County 1985), *aff'd per curiam,* 355 Pa. Super. 409, 513 A.2d 986 (1986), the court stated that plaintiff's "adamant attitude" that reconciliation was not possible, her lack of contact with defendant, her pronouncement that nothing would change her desire to obtain a divorce, and her belief that defendant only wished to remain married so she would care for him were "ample bases" to grant her a divorce. Further, the court found it significant that neither party requested court-ordered marriage counseling.

The court in *Thomas v. Thomas,* 335 Pa. Super. 41, 483 A.2d 945 (1984), found that attempts at reconciliation did not defeat a claim that the marriage was irretrievably broken. The court indicated that the record must show a commitment to re-establish the marriage relationship. *Id.* at 51, 483 A.2d at 949. The fact that the parties unsuccessfully attempted to reconcile was "further evidence that their marriage was unworkable."[2] *Id.* at 51, 483 A.2d at 950.

In *Mackey v. Mackey,* 376 Pa. Super. 146, 545 A.2d 362 (1988), the Superior Court affirmed a divorce decree on the grounds of irretrievable breakdown even though the parties lived in the same home for the relevant three-year separate and apart time period. The Superior Court found that although the couple lived in the same home they lived separate and apart and their marriage was irretrievably broken. Also, although the Superior Court believed it was commendable that the defendant wished to reconcile and was willing to forgive the plaintiff for his adulterous affairs, the court still found that the marriage was irretrievably broken. *Id.* at 154, 545 A.2d at 366. The Superior Court stated that a healthy marriage "can only [be] nurtured by the love of both husband and wife." *Id.* The fact that the defendant stated

---

2. The court in reaching this decision quoted a passage from a New Jersey case, *Brittner v. Brittner,* 124 N.J. Super. 259, 263, 306 A.2d 83, 85 (1973), which this court finds particularly relevant to the case at bar. The New Jersey court stated:

"No real reconciliation was achieved, and defendant should not be penalized for an unsuccessful attempt at one. To hold otherwise would in general inhibit possible attempts at reconciliation by separated couples, a result to be avoided if possible. And if divorce must be the ultimate result, *what better evidence can be offered that there is no reasonable prospect of reconciliation than that the parties have recently tried and failed?"*

he did not want to be married to the plaintiff and demonstrated this desire through "the parties' living arrangements . . . and his romantic relationships" with other women evidenced to the Superior Court that the marriage was irretrievably broken. *Id.* at 155, 545 A.2d at 366. The court concluded the parties were no longer husband and wife, but were only housemates.

Based upon the facts of this case and guided by case law, the court believes the marriage between Larry and Katherine is irretrievably broken. As the facts indicate, the parties have not lived together in the same household as husband and wife since April of 1992. Although the couple attempted reconciliation in November 1993, this reconciliation failed. It was half-hearted, at best. Further, this court does not believe the contact maintained between Larry and Katherine evidences any commitment to re-establish the marital relationship. Although Katherine asserts that Larry had asked her to accompany him on trips in an attempt to reconcile, she did not join him on any of those trips. Further, there was no evidence presented that Katherine herself initiated any steps in an effort to work out the problems in her marriage.

Larry testified that he does not love his wife, is in a relationship with another woman he wishes to marry, and believes that the marriage is over. He also offers that the only reason Katherine wishes to remain married is monetary. The court believes this also supports a finding that the marriage is irretrievably broken. The court agrees with the Superior Court that a healthy marriage must be supported by "the love of both husband and wife." In this case it is painfully obvious Larry no longer loves Katherine. He has evidenced this by living away from the marital home and by engaging in a relationship with another woman whom he asserts

he loves and wants to marry. Additionally, the court finds it odd that Katherine failed to testify that she loves Larry. She did not testify to any attempts at reconciliation on her part, nor did she petition this court for marriage counseling in an attempt to save her marriage. Just like the court in *Wikoski*, this court finds it significant that neither party, especially Katherine, requested court-ordered marriage counseling.

Katherine asserts she believed there was a possibility of reconciliation and Larry did not communicate to her that the marriage was irretrievably broken. Thus, she asserts, this court should deny Larry's divorce request because it is a "unilateral decision" which was uncommunicated to her. The court cannot agree with Katherine's contention. First, the court believes the fact that Larry filed a divorce complaint alleging irretrievable breakdown of their marriage should have put Katherine on notice their marriage was in trouble. Second, Katherine was aware since 1993 of Larry's extramarital affairs, another sign her marriage was in trouble. Third, even if the court believes Katherine, the last attempt Larry made to "reconcile" was in July 1995, six months ago; there has been no contact since. At this time, Katherine did nothing to facilitate this "reconciliation," in fact, beside the attempt at reconciliation in November 1993, the court sees no evidence of any effort made by Katherine to attempt to save her marriage. Simply, the court believes that based on Larry's actions, words and conduct during the last several years "that any hopes [Katherine] harbored concerning the viability of this marriage were unrealistic."

In conclusion, based upon the record in this case, the court finds that there is no reasonable prospect of reconciliation between the parties. The court sees no need to continue this matter and order marriage coun-

seling because the court believes it would be a futile and useless exercise. *Liberto v. Liberto,* 360 Pa. Super. 284, 288, 520 A.2d 458, 461 (1987). Accordingly, the court grants Larry's complaint for a divorce.

## ORDER

And now, March 4, 1996, in accordance with the foregoing opinion, it is hereby ordered as follows:

(1) Plaintiff is granted a divorce pursuant to section 3301(d) of the Divorce Code;

(2) The economic issues are bifurcated for determination at a later date;

(3) Spousal support is converted to alimony pendente lite.