J-S45043-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| K.G.M. and R.M. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| J.A.V., (DECEASED), and S.V. | |
| APPEAL OF: S.V. | |
| | No. 131 WDA 2016 |

Appeal from the Order Entered December 23, 2015
in the Court of Common Pleas of Clearfield County
Civil Division at No.: 2012-1159-CD

BEFORE: OLSON, J., DUBOW, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED AUGUST 04, 2016**

S.V. (Father), appeals from the order of the Court of Common Pleas of Clearfield County (trial court), entered December 23, 2015, that dismissed his petition for custody modification for his sons, E.V., born in April of 2003, and A.V., born in June of 2004 (Children).  We affirm.

Father is incarcerated at SCI-Forest in Marienville, Pennsylvania, serving a term for aggravated assault, false identification, disorderly conduct and harassment.  The Children are in the primary physical and sole legal custody of their grandparents, R.M. and K.G.M. (Grandparents), and reside with Grandparents in Olanta, Pennsylvania, pursuant to a temporary order of

---

[*] Retired Senior Judge assigned to the Superior Court.

the trial court entered September 11, 2012. The mother of the Children, J.A.V. (Mother), is deceased.

Father filed his petition on April 13, 2015, in which he sought visitation with Children at the prison, as well as telephone and mail contact with them. The trial court held a hearing on Father's petition on December 11, 2015, wherein Father testified by phone and Grandparents were represented by counsel, but did not appear at the hearing. At that hearing, Father testified that he had not had any contact with Children in, "like three-and-a-half years since I was out this last time living in Eldred, Pennsylvania." (N.T. Hearing, 12/11/15, at 3). Father admitted that it had been fourteen months since he had sent a letter to Children. (*See id.*) Father also testified that he had not sent any letters to Grandparents since 2013 because Mother had told him not to. (*See id.* at 5). Father was incarcerated in February 2008, for a maximum term of eight years. He was paroled, and then re-incarcerated in November of 2012 for a parole violation. (*See id.* at 11-12).

The trial court entered the order complained of on December 23, 2015. Father filed his notice of appeal on January 15, 2016, and his statement of errors complained of on appeal on February 11, 2016.[1] *See* Pa.R.A.P.

---

[1] Because there was no objection or claim of prejudice by Appellee, we have accepted Father's late filing in reliance on our decision in *In re K.T.E.L.*, 983 A.2d 745, 747-48 (Pa. Super. 2009).

1925(a)(2). The trial court entered an opinion on February 17, 2016. **See** Pa.R.A.P. 1925(a).

Father presents the following questions for our consideration:

I. Whether the trial court's determination that it is not in the Children's best interest to have regular periods of telephone communication, written correspondence and/or prison visitation with [Father] was supported by sufficient evidence?

II. Whether the trial court erred in denying [Father's] request for regular periods of prison visitation with the [Children], where it did so without considering the requisite factors as outlined by this court in **Etter v. Rose**, 684 A.2d 1092 (Pa. Super. 1996)?

III. Whether in denying [Father's] request for regular periods of telephone communication, written correspondence and prison visitation with the [Children], the trial court improperly considered the hearsay statements, in the form of a letter purportedly authored by the [Children's] therapist where said therapist was not present in court to authenticate said letter nor subject to cross-examination?

(Father's Brief, at 4).

We note that this case does not pertain to custody of the Children. Although Father titled his complaint "Complaint for Partial Custody, Visitation and Telephone Communication," in it he seeks "regular periods of telephone communication, visitation, and written correspondence, as well as requiring [] Grandparents to provide [] Father with information concerning the [C]hildren's education, physical and emotional health, and photographs of the [] [C]hildren." (Complaint for Partial Custody, Visitation and Telephone Communication, 04/13/15, at 3, **see id.** at 1). Furthermore, during the hearing on Father's complaint, he explained:

- 3 -

I just want to make sure that I can write to [the Children] or make a phone call or something, be able to talk to them. I want to have the option, you know.

Like right now I can't. I can't even send them a birthday card or anything. Like I can't – I have no contact at all.

(N.T. Hearing, 12/11/15, at 2).

Upon careful review of Father's complaint, we find that he does not seek any form of legal or physical custody of the Children.[2] Accordingly, we have applied the standard of review pertinent to an order concerning a request for visitation. Although the trial court did not specifically apply this standard in its Rule 1925(a) opinion, "we can affirm the . . . court order on any valid basis, as long as the court came to the correct result[.]" *In re E.M.I.*, 57 A.3d 1278, 1290 n.6 (Pa. Super. 2012).

Our scope and standard of review concerning a visitation order is as follows:

> [O]ur scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we

---

[2] The Domestic Relations Act defines **legal custody** as: "The right to make major decisions on behalf of the child, including, but not limited to, medical, religious and educational decisions." 23 Pa.C.S.A. § 5322. It defines **physical custody** as: "The actual physical possession and control of a child." *Id.* The act also provides for **partial physical custody** which is defined as: "The right to assume physical custody of the child for less than a majority of the time[,]" and **shared legal custody** which is defines as: "The right of more than one individual to legal custody of the child." *Id.*

are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record.

The standard of review of a visitation order is the same as that for a custody order. Moreover, [t]he polestar and paramount concern in evaluating parental visitation . . . is the best interests and welfare of the children. "This determination will be made on a case-by-case basis and premised on a weighing of all factors which legitimately affect the child's physical, intellectual, moral and spiritual well-being." *Etter*, [*supra* at 1093].

*Cramer v. Zgela*, 969 A.2d 621, 625 (Pa. Super. 2009) (some citations and quotation marks omitted)

Additionally,

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*S.M. v. J.M.*, 811 A.2d 621, 623 (Pa. Super. 2002) (citation omitted).

In his first issue, Father claims that the trial court erred in concluding that it is not in the best interest of the Children to visit with him. (*See* Father's Brief, at 7-12). Specifically, he claims the court's factual findings and conclusions with regard to best interests are not supported by the record. (*See id.* at 9-12). We disagree.

Preliminarily we note that Father makes no effort whatsoever to link the facts of his case to the law; he simply claims that the evidence does not support the trial court's determinations. (*See id.* at 7-12). "The failure to

develop an adequate argument in an appellate brief may [] result in waiver of the claim under Pa.R.A.P. 2119." ***Commonwealth v. Beshore***, 916 A.2d 1128, 1140 (Pa. Super. 2007), *appeal denied*, 982 A.2d 509 (Pa. 2007) (citation omitted). "[A]rguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." ***Lackner v. Glosser***, 892 A.2d 21, 29-30 (Pa. Super. 2006) (citations omitted). Accordingly, Father's first issue is waived.

Moreover, it would not merit relief.

> A visitation request by an incarcerated parent necessarily stands on different footing than a traditional custody petition. In prison visit cases, the court in fashioning an appropriate order, where it determines visits would be in the child's best interests, is limited to a determination of the number of visits and perhaps some contacts through telephone calls and written correspondence. . . . Moreover, prison visit requests involve additional factors unique to that scenario that courts must consider in evaluating the overarching best interests of the child. For example, in ***Etter***[, ***supra***,] the Superior Court recognized some of the factors to be considered in deciding a question of visitation where the parent is incarcerated: (1) age of the child; (2) distance and hardship to the child in traveling to the visitation site; (3) the type of supervision at the visit; (4) identification of the person(s) transporting the child and by what means; (5) the effect on the child both physically and emotionally; (6) whether the parent has and does exhibit a genuine interest in the child; and (7) whether reasonable contacts were maintained in the past. . . .

***D.R.C. v. J.A.Z.***, 31 A.3d 677, 687 (Pa. 2011).

> While there is no case law which permits denial of visitation with a parent because of incarceration alone, we believe there is a basis for creation of a presumption, to be rebutted by the prisoner parent, that such visitation is not in the

best interest of the child.  Appellant must, however, be  afforded a hearing in which both parties are permitted to establish the relative benefits or harm to the child occasioned by visitation with father while in prison.

*Etter*, *supra* at 1093.

Here, the trial court held a hearing on Father's petition for visitation on December 11, 2015, during which he was afforded the opportunity to present his argument that it was in the Children's best interest to visit with him.  However, Father presented no evidence to rebut the presumption that visitation at the prison would not be in the best interest of the Children.[3] *See id.*

Our review of the certified record reveals that the trial court considered the evidence presented at the December 11, 2015 hearing and made its decision based upon its evaluation of the best interest of the Children.  (*See* Trial Court Opinion, 2/17/2016, at 2-9).  The court considered the relevant factors suggested in *Etter*, *supra*, in evaluating Father's request for visitation.  (*See* Trial Ct. Op., at 4 ("[Father] has had little to no contact with the Children for years . . . [including] prior to his incarceration."); *id.* at 5 ("While contact with . . . [F]ather may be beneficial to some degree, this Court finds that under the circumstances of this case, such benefit is outweighed by the detrimental impact that frequent visits to

---

[3] We note that in his brief, Father similarly has not set forth any argument that it would be in Children's best interest to visit him in prison, but rather simply argues that the trial court erred in concluding otherwise.  (*See* Father's Brief, at 15).

a state prison will likely have on children of this age."); *id.* at 8 ("[T]he distance from [Grandparent's] residence [to SCI Forest in] Marienville, [Pennsylvania] does not work in [Father's] favor. . . . This would impose a significant amount of transportation time on the Children . . . for very little benefit."). Although the trial court did not specifically set forth a finding regarding the type of supervision at the visit, *see Etter*, *supra* at 1093, our review of the record reveals that Father failed to adduce testimony at the hearing that would support weighing this factor in favor of awarding him visitation.

Accordingly, we conclude that the trial court properly exercised its discretion in concluding that it was within the Children's best interest to deny Father's request for visitation. *See Cramer*, *supra* at 625. Father's first issue would not merit relief.

In his second issue, Father argues that the trial court erred by not considering all of the factors set forth in *Etter*, and that no evidence was presented for the trial court to reasonably determine those factors. (*See* Father's Brief, at 12-13). We disagree.

In *Etter*, this court set forth factors to be considered when deciding an incarcerated parent's request for visitation. *See Etter*, *supra* at 1093. The Pennsylvania Supreme Court considered these factors in *D.R.C.*, *supra* recognizing them as "some of the factors to be considered in deciding a

question of visitation where the parent is incarcerated[.]" ***D.R.C.***, ***supra*** at 687.

Here, as discussed above, the trial court considered most of the ***Etter*** factors, and the sixteen best-interest factors in making its determination. (***See*** Trial Ct. Op., at 2-9). Father has not cited, and our review of relevant case law does not reveal, any legal authority for the proposition that an evaluation of each ***Etter*** factor is mandatory to the trial court's decision. Therefore, we conclude that the trial court did not abuse its discretion in considering most, but not all of the ***Etter*** factors in making its determination. ***See D.R.C.***, ***supra*** at 687; ***In re E.M.I.***, ***supra*** at 1290 n.6; ***Etter***, ***supra*** at 1093. Father's second issue does not merit relief.

In his third issue, Father argues that the trial improperly considered a letter written by the Children's therapist. (***See*** Father's Brief, at 13-15). Specifically, he claims that the letter constituted hearsay and thus the trial court erred in considering it. (***See id.*** at 14). However, our review of the certified record supports the trial court's conclusion, where a transcript from the hearing reveals that, although Grandparents' counsel described the letter to the court, she neither admitted it into evidence, nor provided a copy to the court. (***See*** N.T. Hearing, 12/11/15, at 9-10). Furthermore, in its Pa.R.A.P. 1925(a) opinion, the trial court stated, "[C]ontrary to [Father's] assertion in his statement of matters [sic] complained of on appeal, the [c]ourt did not consider the letter from [the] Children's therapist stating that

the Children do not want to see [Father]. Simply put, it was not a factor in the [c]ourt's decision in this particular matter." (Trial Ct. Op., at 7.) Father's third issue is without merit.

Accordingly, we affirm the order of the Court of Common Pleas of Clearfield County, entered December 23, 2015, which dismissed Father's complaint, albeit on another basis.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/4/2016