J-S62002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| A.-M.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| D.R.B. | : | |
| | : | |
| | : | No. 535 MDA 2016 |
| APPEAL OF: A.-M.W. | : | |

Appeal from the Order Entered December 16, 2015
In the Court of Common Pleas of Union County
Civil Division at No(s):  15-0430

BEFORE:  GANTMAN, P.J., DUBOW, JENKINS, JJ.

MEMORANDUM BY JENKINS, J.:                **FILED OCTOBER 07, 2016**

A.-M.W. ("Father") appeals, *pro se*, from the order awarding D.R.B. ("Mother") sole legal custody and primary physical custody of the parties' minor daughter, J.D. ("Child") (born in November of 2008).  In this order, the trial court additionally granted Father supervised visitation of Child no less than two times per year, one visit around the Christmas holiday and the other visit around the Fourth of July holiday.  The order further directed Mother to take Child to the State Correctional Institution at Somerset ("SCI Somerset"), located in Somerset, Pennsylvania for these visits; and Father to pay not less than sixty dollars in advance to cover Mother's costs of gas for the trip.  We affirm.

On May 19, 2009, Father was convicted of murder in the third degree. Father received a ten to twenty year sentence for his conviction.  Father is

currently at SCI Somerset. On July 30, 2015, Father filed a custody complaint seeking custody of Child. On December 14, 2015, a hearing was held on the custody petition. Following the custody hearing, the trial court granted Mother sole legal and primary physical custody of Child. Father filed an application for reconsideration on January 13, 2015. On January 15, 2016, the trial court denied Father's application for reconsideration.

On January 13, 2016, Father filed a notice of appeal but failed to simultaneously file a concise statement of errors complained of on appeal, in contravention of Pa.R.A.P. 1925(a)(2)(i) and (b). On January 15, 2016, the trial court issued an order directing Father to file a concise statement of errors complained of on appeal within twenty-one days of the order. Thereafter, on February 1, 2016, Father filed a concise statement of errors complained of on appeal.[1]

---

[1] Although Father failed to comply with Pa.R.A.P.1925(a)(2)(i) and (b), relating to children's fast track appeals, we decline to dismiss or quash his appeal. *See In re K.T.E.L*, 983 A.2d 745, 747 (Pa.Super.2009) (holding that the failure to file a concise statement of errors complained of on appeal with the notice of appeal will result in a defective notice of appeal, to be disposed of on a case-by-case basis). Here, Father filed the Rule 1925(b) statement nineteen days after filing the notice of appeal. However, since the misstep was not prejudicial to any of the parties and did not impede the trial court's ability to issue a thorough opinion, the procedural error was harmless. *Cf. J.P. v. S.P.,* 991 A.2d 904 (Pa.Super.2010) (appellant waived all issues by failing to timely comply with the trial court's direct order to file a concise statement); *J.M.R. v. J.M.*, 1 A.3d 902 (Pa.Super.2010) (stating that failure to file a Rule 1925(b) statement of errors complained of on appeal, when ordered by the Superior Court, will result in a waiver of all issues on appeal).

On appeal, Father presents the following issues for our review that we have reordered for ease of disposition:

1. Whether the trial court was less than an impartial fact-finder and abused his discretion as a result of unreasonableness, partiality, prejudice, bias, and ill-will?

2. Whether the trial court erred by not allowing video-conference?

3. Whether trial court erred by not recusing himself?

4. Whether trial court erred by denying relocation provisions?

5. Whether trial court erred with a final order not conforming with Rule of Court and Pennsylvania Statutes?

6. Whether trial court erred denying reconsideration as a result of unreasonableness, partiality, prejudice, bias, and ill-will?

Father's Brief at 7.[2]

In custody cases, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law,

---

[2] Father's fifth and sixth issues on appeal were not raised in his Rule 1925(b) statement. Thus, he has waived these issues. *See Krebs v. United Refining Co.*, 893 A.2d 776, 797 (Pa.Super.2006) (stating that we will not address an issue that is not included in the appellant's Rule 1925(b) statement).

or are unreasonable in light of the sustainable findings of the trial court.

***C.R.F. v. S.E.F.***, 45 A.3d 441, 443 (Pa.Super.2012) (citation omitted).

Additionally, this Court has stated that

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa.Super.2006) (citation omitted).

With any custody case decided under the Child Custody Act, the paramount concern is the best interests of the child. ***See*** 23 Pa.C.S. §§ 5328, 5338. Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S. § 5338.

The factors listed in section 5328(a) are as follows:

**(a) Factors.**-- In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

4

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Here, in its "Findings and Conclusions," the trial court considered the testimony and evidence from the custody hearing held on December 15, 2015, in relation to all of the custody factors listed in section 5328(a), and set forth its findings regarding each of the factors. *See* Trial Court Opinion, 3/30/16, at 5-7.

Initially, we address Father's complaint that the trial court was less than an impartial fact-finder and abused its discretion as a result of unreasonableness, partiality, prejudice, bias, and ill-will. Father's Brief at 14. In his brief, Father contends that the trial court diminished his opportunity for a "substantial amount of visits (substantial, meaning-- Bimonthly)." *Id.* at 17.

The right to visitation, although constrained by a natural parent's incarceration, is not extinguished by the sole fact of incarceration. *Etter v. Rose*, 684 A.2d 1092, 1093 (Pa.Super.1996). Rather, where one parent is incarcerated the presumption is that visitation at the prison is not in the child's best interest. *Id.* The incarcerated parent, however, has the right to a hearing, at which time he is given the opportunity to present evidence to rebut that presumption and show that the visitation would be beneficial and in the child's best interest. *Id.*

6

Further, we have delineated the factors to be considered by the trial court in evaluating the best interests of a child when deciding an incarcerated parent's request for visitation: (1) age of the child; (2) distance and hardship to the child in traveling to the visitation site; (3) the type of supervision at the visit; (4) identification of the person(s) transporting the child and by what means; (5) the effect on the child both physically and emotionally; (6) whether the parent has and does exhibit a genuine interest in the child; and (7) whether reasonable contacts were maintained in the past. *Etter*, 684 A.2d at 1093.

Additionally, we regard the nature of the criminal conduct that culminated in the parent's incarceration as another relevant consideration. *D.R.C. v. J.A.Z.*, 612 Pa. 519, 536, 31 A.3d 677, 687 (2011).

Child is seven years old and will be ten years old when Father is eligible for parole. The trial court found:

> Mother has limited resources and could not afford gas. [Father] is not providing any type of support to cover any of the expenses related to raising [C]hild and [the trial c]ourt was uncomfortable placing an additional financial burden on [] Mother. For these reasons, the [trial c]ourt limited the visits to twice a year, however, required [Father] to contribute financially to the cost of the trip.

Trial Court Opinion, 3/30/16, at 4. During the custody hearing, Father agreed to pay the expenses of gas as decided by the court. N.T., 12/14/15, at 8. Furthermore, the trial court found that Mother brought Child

voluntarily for a visit to SCI Somerset and allows phone calls with Father and Child. Trial Court Opinion, 3/30/16, at 5.

After a careful review of the record, we conclude that the trial court's findings are supported by competent evidence. The trial court reasonably concluded that regular telephone communication between Father and Child, and two visits per year, would allow Child to continue to know her father and will best serve Child's needs and welfare at this stage in Child's life. Additionally, we note the record is devoid of evidence of trial court bias, partiality, or ill-will.

Next, we address Father's argument that the trial judge erred by not recusing himself because the judge was the prosecutor for Father's case that resulted in his criminal conviction. Father's Brief at 13. We disagree.

> The standards for recusal are well established. It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially. Regarding the disposition of a motion for recusal, this Court has explained:
>
>> In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to access the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion. In reviewing a denial of a disqualification motion, we recognize that our judges are honorable, fair and competent.

8

*Arnold v. Arnold*, 847 A.2d 674, 680-81 (Pa.Super.2004) (citations, ellipses and quotation marks omitted).

Initially, Father did not raise this issue at the custody hearing. "It is well settled that issues not raised at trial are waived and cannot be raised for the first time on appeal." *In re Adoption of D.M.H.*, 682 A.2d 315, 322 (Pa.Super.1996) (citations omitted); *see* Pa.R.A.P. 302(a). Further, although we recognize that Father is proceeding *pro se*, this does not preclude us from a finding of waiver. It is well established that

> [w]hile this [C]ourt is willing to liberally construe materials filed by a *pro se* litigant, . . . [such litigant] is not entitled to any particular advantage because he lacks legal training. Further, any layperson choosing to represent himself in a legal proceeding must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing.

*Rich v. Acrivos*, 815 A.2d 1106, 1108 (Pa.Super.2003) (citations, quotation marks and brackets omitted).

Moreover, even if Father had properly preserved this issue, it would merit no relief. As the trial judge explained:

> [the trial judge was] the District Attorney in Snyder County at the time of [Father's] offense. However, prior to [Father]'s prosecution, the undersigned had been elected as Judge and took no part in [Father]'s sentencing proceedings in [the trial court]. The [trial c]ourt does not believe that a recusal is necessary under the circumstances.

Trial Court Opinion, 3/30/16, at 3; *see also Arnold*, 847 A.2d at 681 (stating that "[a]dverse rulings alone do not establish the requisite bias

9

warranting recusal, especially where the rulings are legally proper"). We agree with the trial court's determination regarding waiver and further that recusal would not have been required in this matter, if requested.

Next, we address Father's contention that the trial court erred by not allowing a videoconference, and by only allowing Father to participate in the hearing via teleconference. Initially, Father's argument was not raised at the custody hearing, and it is therefore waived. *In re Adoption of D.M.H.*, 682 A.2d at 322. However, had Father not waived his claim, we would find it lacks merit. Father's issue implicates his guarantee of due process of law under the Fourteenth Amendment to the United States Constitution. Specifically, Father argues "not allowing video-conference removed [Father's] ability to properly identify Judge [Sholley] as the former prosecutor of [Father]'s criminal case." Father's brief at 13.

It is well settled that "[p]rocedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." *Garr v. Peters*, 773 A.2d 183, 191 (Pa.Super.2001) (internal quotation marks and citations omitted). "Due process is flexible and calls for such procedural protections as the situation demands." *In re Adoption of Dale A., II*, 683 A.2d 297, 300 (Pa.Super.1996) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)).

The trial court stated, "the Department of Corrections at Somerset would not permit video participation in civil proceedings." Trial Court Opinion, 3/30/16, at 3. However, the trial court allowed Father to participate in the custody hearing via telephone, present his own testimony, and afforded him the opportunity to make additional inquiries of the trial court. Thus, Father's claim would fail even if it had been preserved.

Lastly, Father argues that the trial court erred by "denying relocation provisions." Father did not raise an objection to relocation at the hearing. Thus, Father's claim is waived. *See In re Adoption of D.M.H.*, 682 A.2d at 322. Even if his claim had not been waived, Father's claim is without merit. The trial court found that Mother "relocated from New Columbia to Loganton less than six (6) months prior to the hearing, however, there was no indication how this in any way affects [Father's] rights regarding custody." Consequently, Father's claim is without merit.

Accordingly, finding no abuse of discretion, we affirm the trial court's custody order awarding sole legal and primary physical custody of Child to Mother.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/2016